Case number 20-1047 et al. Nalini Kapur et al. Appellants versus Federal Communications Commission. Mr. Corbett for the appellants, Ms. Citrin for the appellee. Good morning. Morning. Thank you for hearing this case. I am Dennis Corbett for the appellants Nalini Rishi and Ravi Kapur. We appreciate this as the last case on the court's oral argument schedule and calendar year 2020. I am actually glad for the opportunity to wear a coat and tie. Such chances are few in a pandemic. This is a case brought to this court pursuant to your exclusive jurisdiction under section 402B of the Communications Act to hear FCC licensing cases. We seek review of what the record shows to be unsustainable FCC failures to fulfill its obligations under section 309 of the same act. 309's requirement of hearing is satisfied when we present one or more substantial material questions of fact for the FCC in a licensing case. Such questions, of course, proceed from record evidence. Mr. Corbett, before we get to the merits, I want to talk about the possibility of mootness. As I understand it, you're asking for a station to be taken away from a company, OTA, that no longer owns it and returned to a company, your client's former company, that no longer exists. How is that not a moot case? For the reasons we set forth in the reply brief to take the sale to TV-49 first, the record of the case makes clear that under the licensing scheme of 309, these cases can take time. I have followed the statutory road map in every case, whether it be reconsideration, applications for review, et cetera, which I must follow in order to get judicial review secured. During that period of time, if the target, OTA in this case, elects to sell the station to another party, in this case TV-49, which elects to buy it, subject to the cloud on the title, which of course, this case puts there, and which the FCC acknowledged in the decision, then all those parties are subject to unwind, including TV-49 and including OTA. That's boilerplate. That's got to be the case for a case like this, for this court not to be deprived. Who would we return the station to? Well, that's the next question, to KXT LLC. That's a matter of California law, which was raised by the government in their brief. In fact, it's a California dispute as to whether KXT LLC continues to exist, but the statute to which I cited the court, California 17707.06, makes clear that even if KXT attempts to unwind or dissolve, that it continues to exist for all purposes relating to that unwind. In this case, your honor, OTA and KXT are parties to a signed unwind agreement by which they agreed in the event of a judicial overturn of the grant to OTA, that they would unwind the transaction. It's all buttoned down. It's all signed and agreed to, and the FCC acknowledged- At the end of the day, assume that KXT does not exist. At the end of the day, you think that the station can still be returned to a company that does not exist? The statute provides that it continues to exist, your honor. Okay, and so I will go read it, the statute again. Can you remind me what statute? It's California, it's 17707.06. We have a copy of it in the addendum to our reply brief, so you can find it there. And then the second buyer, the company that OTA sold to, TV49, they're not a party in this case. And so I wonder if we in the FCC are allowed even to do what you want us to do without any kind of due process violation, or whether TV49 is a party that has to be here before we can take their TV station away from them. Again, they elected not to... Before I get to that question, I wanted to point out as well, there's another provision in the California code that says, no action or proceeding shall abate by reason of winding up or dissolution. That's also directly relevant to your question. There are two provisions in there, both the continuation. As to TV49's election not to intervene, nothing prohibited that from doing so. Were they served? Yes. Can you tell me where in the record that is? I can't give you a site to that. That was as part of the service of our original petition. But the commission put TV49 on notice of what every applicant before the FCC to acquire a station license knows. Namely, that the FCC grant of the assignment did not require closing of that deal and that they closed at their risk, subject to the clout on the title, which was the long pending claim by us that OTA lacked qualifications to acquire the station in the first place. So that's merely a risk assessments by TV49. And then if everything were to go your way, if all of these legal questions were to be resolved in your favor, and then the station goes back to the original company, what happens then? That's all part of it. That company then holds the license again, and it would be part of the long winding up. But the majority owners of that company can still sell the station. Your clients are still minority shareholders. So even if you get everything you want from every court in the 32 FCC filings that you've filed, plus appeals and state arbitrations and state litigation, you get everything. And this goes to redressability and standing. You're still a minority shareholder in a company that's going to sell the station. Well, we don't know that, first of all, your honor, as to what they would do. Secondly, pretty committed to selling the station. You've like fought them for, you know, a while now, but okay. But I would suggest in response to your question on standing, just as I cannot establish standing in this court on the basis of a hypothetical injury, which I have not, I argued a concrete injury through the loss of a unique investment. This court cannot deny me standing on the basis of a hypothetical lack of injury down the road by something that may or may not happen. So I can't be whipsawed by hypothetical on the front end and then thrown out of court on the back end on the basis of a hypothetical. Mr. Corbett, you said that you have a concrete injury through the loss of, the concrete injury to your clients at the time of the original sale to OTA was what? The loss of a unique investment in the station. But they were compensated for that, no? Well, as the, as it's a unique investment, it's a unique asset, as we So the, the LLC owns a unique investment and the majority decide to sell it. The minority shareholders object. And that was arbitrated about whether there was authority to sell. And that's been finally determined that there was authority to sell. Right. And in fact, your clients were compensated for the sale of that investment and their proportional, the value to them of that investment. Right. And actually, Your Honor, we have not been compensated. No compensation whatsoever. I believe there's a small amount of compensation to Rishi Kapoor. Other than that, no. And why is that if there are shareholders? That's a bit complicated, Your Honor, other than this case, a bit complicated. I appreciate that. The record does show that there was an escrow agreement created at the time of the original closing in 2014. And the money, the consideration was put into that account. At the same time, the unwind agreement was entered into while there has been some distributions, my understanding to the majority shareholders, not necessarily a fact of record in this case. And that's because the Kapoors refuse to accept because they were afraid that it would affect the harm to them or that it would affect their ability to pursue a live claim. Again, I want to be careful about my representation of the facts concerning the lack of consideration. It's been a contentious matter throughout. It includes, it continues to be in terms of the release of the consideration to the Kapoors from the original sale. And I think to go beyond that, I'm a little reluctant, if only because I want to make sure my representation is the quarter accurate. I can say it's a byproduct of a long contentious matter. Let me just back up. It's your burden in a situation like this to show an injury. It's your burden to persuade us that your client was injured. In the ordinary course, a non-majority shareholding stake is not in control of the sale decision, but does get pro rata remuneration when the business is sold. That would be in the ordinary course. And you're claiming here that nonetheless, assuming facts that aren't in evidence, but just to understand, that nonetheless, these minority shareholders would have preferred that the the FCC character requirement redounds to the benefit of the minority shareholders. Do we have any reason to think that they have a different level of voice on the character question, more voice on the character question than they would on the sale itself? Well, again, this goes to the unique statutory scheme that's in front of this court under 309 and the Communications Act. Any aggrieved person is permitted and the statute wants that aggrieved person to bring character issues to the commission's attention. We are certainly aggrieved by the loss of unique investment by the FCC's decision here to assign the license to an unqualified buyer. We have lost our unique investment as a result of that decision in this unique case, in this circumstance. That's what this case is about. It's not about a business dispute that's bubbled up from the district court. It's about the FCC's obligation to evaluate character qualifications of a buyer. And our case is predicated on a showing that this buyer is not qualified. And therefore, as a result of that FCC decision, we lost our unique investment. Your Honor, I would point out, as I did in the briefing, that the very asset purchase agreement in this case, by which the majority sold the station to the minority, contains a provision on a specific performance that talks about how the station is a unique asset and the loss is not compensable by money. And that's exactly our position as well, that our loss of our unique investment in the station is not compensable by money, even if we had received the consideration that you asked me about, but which I told you we didn't get. But we as a court and the FCC as a tribunal is limited in what it can award, especially as Judge Walker was pointing out, where the original LLC may no longer be in business. They exist, I understand, for the unwind purpose. So envisioning an unwind goes from TV 49 back to OTA, back to the LLC. The LLC in its nascent form says, okay, we're going to have a character assessment of OTA, finds out OTA is terrible, ineligible, can't buy the station, and TV 49 says, never mind, we're happy to buy it from the LLC for its market price. What redress does your client envision it's going to obtain, given that that seems to me the most likely scenario? Again, Your Honor, that's a hypothetical that doesn't exist, may never exist, we don't know. It seems like it's the best hypothetical for your client. I want you to tell me the hypothetical that you're imagining that gets robust redress. The hypothetical I'm referring to is the sale to TV 49 upon getting all the relief. I'm saying, what are you envisioning is the relief that's more satisfactory? Just the relief I'm seeking that our unique investment will have been restored. That's the case. Restored to the LLC? Yes. Then what? Well, then we'll see what happens. I don't- What are you envisioning? You need to be concrete with us because as Walker asked, if the LLC is there only in its nascent form because it's legally required to be able to participate in an unwind, it's not going to go back into business. And, or is that what you're envisioning? I just want to know what you're envisioning. I'm envisioning that it will because there's California litigation that's seeking to restore it to business and that's pending. And as a result, we don't know. But if you're asking for my best case, yes, the KXT LLC will be restored to business. The cancellation will not hold and nor will the dissolution. And there'll be back in business operating the station again. That's my best case. That seems highly conjectural. I mean, one of the inquiries we have to make in assessing standing is whether something is likely or speculative. And the notion that a company that long ago sold this asset would not sell it to a ready, willing, and able buyer that does meet a character standard seems conjectural, but you can tell me what I'm missing and so surmising. Well, the relief that I'm seeking, which is the restoration of the license to KXT LLC, that's what the case is about. That's not conjectural. What you're asking about is conjecture beyond that, which again, as I said, can't be used to We have been injured by the concrete loss of our investment. We're seeking its restoration. That's what the case is about. For this court to then- No, you've been injured by the loss of your investment, because the only claim here is the character claim. You've been injured by the loss of your investment to a buyer of bad character. And if a buyer of good character purchased, you would have no harm, because this is a claim only about the FCC's failure to make a character determination. The FCC is not in a position to say, and therefore this asset cannot be sold. It can be sold by the majority of shareholders to anybody of good character on your theory. That's not the relief I'm asking. It may be the most relief you're legally entitled to. I'm giving you every benefit of the doubt and saying terrible character of OTA, disaster, can't hold. Okay. Unwind all the way back to the LLC, but nothing about your claim, which is a character claim, prevents the LLC from selling to the next willing buyer of impeccable character. But with the return of the station to KXT, the injury has been redressed. You're then talking about subsequent events, which may create a new issue, but my injury has been redressed. The asset, the license has been returned to KXT LLC, and that has redressed my injury. As minority owners, we have reclaimed the investment. To spin it out beyond that and imagine what might happen in the future is hypothetical, and I don't believe defeats my redressability showing, because the relief has redressed my injury in this case. There may be another case as to what happens in the future with another sale, but that's not this case before this is that this is not the usual type of article three question where we don't know what would happen among these various, I'll call them parties. We do know because we know OTA sold to TV49. And while they both took the title at the risk, we know what's happening. So this is not a question of deferring to your allegations about what would happen. We know what would happen. And I'm sorry, I'm not understanding. We know what would happen when? We know what happened in this case all the way to the sale to TV49. And I thought what Judge Walker was trying to focus you on is that those are the facts before this court in terms of not to put words in his mouth, but one way to assess whether or not your clients have likely been injured. And then Judge Pillard came forward pointing out how minority shareholders are normally taken care of. It's not as though your clients own the station or it's even your client's company that owns the station. If you win down the road as I understand it. My clients though had a 42 percent concrete investment in the station and they lost that unique investment. It's unique, your honor. It's unique investment, a unique asset. But the markets can value even unique things. It does every day. It values ballet tickets. It values works of art. It values psychotherapists. It values all kinds of unique services and assets. And it valued this one. And the contract by which it was sold contains a provision, your honor, to which we cited that it's a unique asset. A TV station is a unique asset, the loss of which is not compensable by money. That's in the specific performance provision that we cited in the brief. It's a unique asset, the loss of which is not compensable by money. Is it a loss to your clients or was it a loss to the LLC? You keep saying that your clients owned 42 percent of the station and maybe as a practical way of looking at it, they did. But your clients owned 42 percent of a company and that company had an asset. Company could have had a thousand assets and the company sold an asset. At the end of the day, at the end of that sale, your clients still owned 42 percent of the only thing they ever directly owned, the LLC. Which owned the unique asset. And you're on it to your point. You keep saying unique asset. Let's imagine that your clients own 42 percent of a company and that company had as its assets a thousand pieces of art. And the company sold one of the pieces of art. And then after that, they own 999 pieces of art plus a million dollars because the piece they sold was worth a million dollars. Before all that stuff happened, your clients had 42 percent interest in a company that was valued at, let's say, a million times a thousand. And at the end of the sale, your company, you're sorry, your clients owned 42 percent of a company whose assets still equaled a million times a thousand. So, I'm not sure how minority shareholders in a company that were minority shareholders before an asset was sold and minority shareholders after the asset was sold have been injured when their stake in the company and the value of the company has not changed. Because, again, this is a case, again, brought under a unique Communications Act scheme in which under 309, agreed persons are entitled to bring character qualifications issues to the commission's attention. And that then needs to be reviewed by this court. The idea that actual owners of a company lack standing to challenge the qualifications of a buyer and are not agreed persons under the act and have standing under general standing principles. You're leaving out a prepositional phrase. Unique owners of a company that itself owns a station. They still own 42 percent of the company after all this stuff happened that they didn't like. They still own 42 percent of the company and the company's value was the same as it was before. And of course, they invested in the company as the record shows, because they wanted to have a ownership interest in a TV station. Right, which is a huge disappointment to them, but that's been resolved in the arbitration. Let me ask you, you pointed to the any agreed persons or the broad claim available to raise character defects. So the harm that that provision guards against is not the shareholders protection of unique assets, but presumably a public interest in preventing bad apples from holding scarce and important broadcast licenses. Right. We don't want companies of poor character as the law defines that to own valuable and unique assets like broadcast licenses. Right. I agree with that, Jerome. So that is the harm that the claim that your clients have raised is available to redress. Now, there is no ownership by the company that you have persistently identified as such a bad apple. Why is that not full redress of the injury, this particular injury that you've raised? The injury cognizable by the character provision of the broadcaster? Well, because we again, I don't want to sound I know I might sound repetitive, but we've lost the unique investment that they intended intended to and did secure in a television station, the owner of a television station, the owner of a television station. And and I want to I want to because I because the focus has been on standing and I understand the court's concerns are withstanding. There is the alternate showing that we made as to viewership. And I understand the argument the other way, plus what? If we leave aside for a moment, the standing which I believe we have as as owners, which in three or nine cases is unusual. It's unusual to find owners in three or nine cases at all. But we're also viewers and programmers in the station. Ravi Kapoor, as the record shows, had the rights to have DTV, a channel that he owns and programs on KXT LLC. And the first thing that OTA did upon acquiring the license was throw them out of the station and take them off the air. So, you know, this the injury is not limited to the loss of that investment. The injury also goes to the loss of a program channel owned by Ravi Kapoor. And is any of that the object of the character provision of the communications? It would seem to me that you have a nexus problem and showing that the harms that you are identifying, which may be concrete, that they are caused by or maybe more vividly that they could be redressed by the remedy that you're seeking. I think those those showings of viewership and loss of DTV carriage are a classic type of showing in a three or nine case. You know, viewership goes back to they cite the Rainbow Push cases, with which I know Judge Rogers is familiar. They go back, you know, a little bit in time. But those cases stand for the proposition that viewership plus what? Well, in this case, plus the loss of DTV carriage, which is a programming link to this case. So my view, injury and concrete injury abounds in this case. But those cases were not about the character of of the sale or purchase party, right? Yeah, they were. The Rainbow Push were challenges to buyers and the sale of a station because the seller, you know, they had to do with the viewership discrimination. There were discrimination cases for the most part. But they had to do with the character. Character was very much at play in those cases. And the question is, what what right does a you know, what makes for an aggrieved party in a three or nine? And we have not only are we owners of a unique asset, but we're viewers that lost the programming channel as a result of the sale to an unqualified buyer. I mean, again, that's ultimately what three or nine is designed to allow aggrieved parties to bring character qualifications to the attention in a licensing proceeding. And that's exactly what happened here. We have shown multiple ways, established multiple grounds for standing under all three tests, injury, traceability and redressability. All right, why don't we hear from the FCC and then we'll give you some time. Thank you. Good morning, your honors. May please the court. I'm Sarah Citron for the FCC. And in our view, although Mr. Corbett has said this is not a business dispute, that's exactly what this case is. In arbitration and state court proceedings, the Kapoors lost their bid to prevent their former business partners from selling the station, the unique asset. They then sought to saw that sale by bringing before the FCC a series of character complaints against OTA, the purchaser. The commission reasonably found that none of those allegations warranted an evidentiary hearing. And although there are numerous grounds on which this court could affirm that decision on the merits, it lacks jurisdiction to do so because the Kapoors lack standing. And I'll turn, if I may, to the standing issues first. Do you also think they lack mootness? Sorry. Do you also think that the case is moot? Well, your question about mootness, I think, encompassed two problems. One was the redressability issue that the LLC has been dissolved. And that's the way we view this issue. The TV49 rendered the case moot, or I guess it happened before the case started, so maybe that would be a question of standing. But in any event, we don't dispute that if for some reason the Kapoors were to prevail in this case, which there's no reason they should on the merits, the TV49 transaction could hypothetically be unwound. But the redressability issue of the dissolved LLC is a real problem for the reasons I think the court, some of the reasons some of you have articulated, which is to say, I think as Judge Pillard recognized, no matter the legal status of the LLC to unwind or pursue litigation causes of action that may have existed before the start of this appeal, at no time in the course of this appeal has the LLC been in a position to operate as a going concern, which it would need to do to function as the licensee of this station. And that remains true today. There was a lawsuit that was filed after the FCC filed its brief in this case and pointed out the dissolution of the LLC. But not only is the result of that litigation speculative, and I think I would agree that the most likely, it doesn't seem likely to succeed, but whatever the likelihood of that suit, what matters for purposes of the standing analysis is were these injuries redressable at the time this appeal was initiated or at any time in the course of this case. And because the LLC is not in existence as a going concern, they aren't redressable. What about counsel's argument about the nature of section 309 argue that necessarily you want minority shareholders to be able to appear before the commission when the challenge is based on character. So in other words, in that scenario, why don't we look at the question of standing from his clients' perspectives and section 309? Your Honor, in our view, that approach would be contrary both to the shareholder standing doctrine and to this court's decisions concerning audience standing. It seems to suggest something even broader than the idea of automatic audience standing, which this court in the 2003 Rainbow Push case unequivocally made clear that there is no such thing as that broad automatic audience standing. And with respect to the minority shareholders, you know, before this court, you know, setting aside any issues of administrative standing, this court doesn't allow minority shareholders to vindicate rights that belong to the corporation here, the LLC. And what the Kapoor's have said is that they are seeking to vindicate their between their ownership interests and the LLC's ownership interests. They have only a derivative interest. And in that case, there's no reason that they should be able to stand in the shoes of the corporate entity. I was surprised to see so little case law on that point, because it seems coherent to say that whatever interest is being asserted as concrete and supportive standing, would have to be an interest that minority shareholders themselves are legally, you know, capable of asserting. And the notion that they can't assert an ownership interest, like it would seem like there would be dozens of cases on that. But I didn't see a lot of case law on that. It's actually quite thin. We have this Ninth Circuit case. And so what's up with that? I, you know, I'll acknowledge Judge Pillard, I had something of that reaction myself. And it may have to do with just a different factual, you know, the ways that these cases present themselves factually, they're not always maybe the volume of them is not sufficient, at least in the FCC context to produce a line of cases that are directly analogous. But there are a in this court, the K versus FCC, Bob law versus FCC that I think are consistent with this, this more abstract principle of not allowing third party standing, which I think is, you know, really clear if not factually on all fours, the franchise tax case, the Supreme Court case, makes clear that, that a minority shareholder in the composer's position should not be able to pursue these to rest on the idea that their concrete injury is an ownership interest that actually belong to the company. And I think one of you was was pointing out to there is a bit of a causation issue, where Judge Walker, your point was, and I think it's correct that at the start of this case, or at the start of the FCC proceeding, the compose had a 42% ownership interest in the LLC. And at the end of the FCC is proceeding, they did as well. The sale was really a function, a contractual, you know, it was a function of their minority interest in the LLC. And it's not something that arose from the FCC decisions. But if the court is of shareholder standing, or audience standing, and what is enough of a nexus, and I think, by the way, that Mr. Corbett hasn't established a nexus between the compose asserted role, and it's really Robbie, who has attested that he's a viewer of the station, but, but there's no connection between that interest, that viewership interest, that public interest, and the private interests that Mr. Kapoor has asserted, and again, not attested to, but asserted in as Daya TV's founder, and as someone who is interested in the programming of Daya TV, but all of that, all of those difficulties are swept aside by the redressability problem, which is that, you know, whatever, as Judge Pillard put it, if the Kapoor's were to get everything they wanted here, and if OTA were a bad actor, and the FCC had acted irrationally, there's still no way to restore this station to K-A-X-T-L-L-C as licensee. Is there a simpler way to look at that? I mean, it seems even maybe more than the character provision and the broad availability of a character claim is there to remedy, to think about ownership interests, that, that, I mean, the harm is there because it, the, the Congress thought that it would be a public problem for bad apples to own broadcast licenses, and it seems in a way, neither here nor there, whether someone who is claiming a transfer to an owner of ineligible character has any other concrete interest, or help us out with that. Like, in a way, it just feels like it's, it relates to a different claim to worry about the ownership interest, but maybe that's, maybe that's too cut and dried. My understanding is that, and, and the has an informal objection vehicle also, which is partly what was at issue in this case, where I think parties that might not be able to, that may not have a concrete injury could object and bring issues to the commission's attention, but I don't, you know, again, I want to be clear not to confuse here the requirements of administrative standing and judicial standing. I, I think it's very clear under section 402 that a party aggrieved is someone who meets the elements, the three standard elements of article three standing, and the courts just can't proceed in this case unless they can satisfy all three of those, which they haven't. I see my time is up. If I could briefly make just a couple of general points about the merits, because I think we easily win there. I'd like to emphasize that this isn't a case, as the Kapoor's have represented, where the commission ignored their allegations against OTA. The commission looked at these, took them seriously, addressed them in a number of opinions, as Judge Walker alluded. And so that's just not this case. And in addition, the issue here is really, did the commission reasonably determine, or was it irrational in deciding that no evidentiary hearing was required on any of these allegations? And that's a question of internal FCC process of a kind to which this court gives the commission considerable deference. And at bottom, I would just say that on none of the five issues have Kapoor's come close to showing that the commission's reasons, which it explained, were arbitrary and capricious. I think that the concern is what is the, I mean, what is the narrowest ground on which standing might be available to even reach the merits? And it's a little bit tricky. I think it's probably lack of redressability rather than lack of harm. Well, of course we maintain that there's no harm either, but I don't disagree that there's clearly no possibility of redress, and that might be the most straightforward path for the court. Ms. Citron, another straightforward path is that every petitioner has a duty to show that we have jurisdiction. That means they have a duty to show standing. In the petitioner's blue brief, they did not show that they had standing. They didn't even try. Instead, they put it not in their brief, but they put it in an addendum, which allowed them to exceed the page limit. Now, they cite a DC Circuit checklist on the DC Circuit's webpage, which says that they can do that. Of course, a webpage cannot override a circuit rule. Do you think that because the webpage seems to say that they can do what they did, that we should allow them to do what they did, or do you think we should stick with the actual rule, in which case we wouldn't even read their standing argument, and in which case they haven't showed standing? Well, Your Honor, that is our view, that it was an improper use of the addendum. It took them over the word limit. So certainly, if that's the path the court chooses, we think that's a viable... What's your best argument for why it's fair for us to do that, and not unfair, considering we do have this webpage that says maybe they can do it? Well, I think by their own admission, they used this vehicle because they otherwise wouldn't have had enough words to make their showing. I believe we pointed to that in the footnote of our brief addressing the... They're dueling footnotes on it, and I'm good. I don't have any more questions along this. I just wanted to hear your thoughts on the fairness question. Certainly. If there are no further questions, I respectfully ask that the court dismiss the appeals, or in the alternative, deny them. Thank you. Thank you. All right. Counsel for petitioners? Thank you, Your Honor. A couple of points on redressability, which was addressed at the very... Well, first, let me address Judge Walker's point about the strict application of the rule. Our brief was under the word count, and we simply, for the court's convenience, put the standing showing rather than bifurcate it, as that rule would suggest. Strictly bifurcate it. We simply put it all in one place for the court's convenience. I think it would be an incredibly harsh result to read that rule as concluding this case because of the form in which we presented our standing showing. I would point out that even in the text of the brief in case 1048, we do and the three prongs are certainly shown in the brief in the 1048. So we were following what we understood to be court guidance on that, and it was not a device to exceed the word limit. Even the government concedes that you could bifurcate it. We could simply bifurcate if the court felt that was important for some formal reason. I want to find a standing problem below. The commission never challenged our standing. OTA never challenged our standing. I believe because it was self-evident. One of the things I didn't point out earlier was that, again, these are particularized cases involving the Communications Act and FCC processes. The Kapoors, as owners of an LLC, were actual parties to the FCC application itself, which is the subject of this appeal. They're parties to the application, and that's because the FCC views LLC members, regardless of their percentage, as having enough influence as to matter for FCC purposes. So I believe that there was no challenge to our standing from the beginning because it was self-evident that as owners of the facility, owners of the licensee of the facility, that our standing was self-evident. So it wasn't challenged. Again, as a party to the application, the commission and this court should actually welcome parties bringing character issues to the floor and bringing them to this court for review to that the FCC is upholding its obligations as spectrum steward. I strongly disagree with opposing counsel's representation. The commission did everything right here. In fact, under motor vehicles, the tests, the three tests, they did practically nothing right, in our view, as the brief shows. Their decisions run counter to the evidence in front of the agency. They entirely failed to consider important aspects of the problems, and they offered rationales that are so implausible as not to survive judicial review. So we differ strongly on that. I understand the time period, Mr. Corbett, the perspective from which we evaluate your client's standing. Typically, when we get a case from an agency, we look at the standing, believe at the time they come to court because the standing only applies to the Article III tribunal. In this situation, is that the right temporal framework or is it something else? And if so, why? In other words, we assess standing as of a particular time. I don't think so. I don't, you know, based on, for example, the Stolz case, other cases, justiciability and issues can arise later than the filing of a brief. This court always needs to satisfy itself of standing. So I don't, I don't believe that there's a hard and fast, bright line at the time of establishing the standing. You need to have standing the time you file, and I need to have standing today, which I believe I've shown. I did want to add on redressability that, again, the issue before this court is whether the injury in this case is redressable in this case, not in some other case down the road, not in the future, not based on what might happen, but what will happen in this case. And there's no contesting, even by a government counsel, that the unwinds could be ordered and the license restored to KXT LLC. That's what this case is about. And I understand you have speculations about another case down the road about what might happen in the future there, but that's a hypothetical at the back door that can't defeat my standing when I have shown a concrete injury at the front door, namely the loss of our unique investment. So I think it would set, and to your point about the lack of minority shareholder cases, I think that's highly relevant as well. They cited IACOPI, but of course IACOPI expressly declined to find that a minority shareholder lacks standing based on court liberalization of standing principles. And I think it sends, you know, any holding to that effect would simply shut the doors of the court for reviewing agency action. I don't see why the court would want to do that in this case. This court should be sitting in review of FCC's failures as spectrum steward. That's what the Communications Act envisions. That's what 309's express language is all about. Agree persons. We're agreed persons in multiple ways. As I said, injury abounds. We have multiple injuries we've brought to this court's attention. All right. We will take the case under advisement. Thank you.
judges: Rogers, Pillard, Walker